IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARNOLDO CARRILLO,

    Plaintiff,

    v.                                                      No. 2:25-cv-00219-KWR-DLM

UNITED STATES OF AMERICA,

    Defendant.

## **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**THIS MATTER** comes before the Court on the United States's Motion to Dismiss for Lack of Jurisdiction (**Doc. 12**). Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the motion is well-taken, and therefore, is **GRANTED**. The case is dismissed without prejudice.

## BACKGROUND

Arnoldo Carrillo ("Plaintiff") brings suit under the Federal Tort Claims Act ("FTCA") and alleges that the following events caused his injuries. **Doc. 1**. On March 23, 2023, United States Customs and Border Protection ("CBP") pursued a fleeing truck that crashed into a truck Plaintiff occupied. *Id.* ¶¶ **17, 55**. Plaintiff contends that the crash and his resulting injuries were caused by the CBP agents' negligent pursuit. *Id.* ¶ **64**.

On or about June 25, 2024, Plaintiff filed an administrative claim requesting $2,000,000.00 in damages. *Id.* ¶ **5**. On March 3, 2025, Plaintiff filed this lawsuit. **Doc. 1-1**. On June 18, 2025, CBP denied Plaintiff's administrative claim citing Plaintiff's filing of the present lawsuit. **Doc. 12-1 at 6**.

**LEGAL STANDARD**

A federal court must dismiss a case if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1), (h)(3). A court has subject matter jurisdiction over a suit against the United States only if the United States "has waived its immunity." *Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017) (quoting *United States v. Orleans*, 425 U.S. 807, 814 (1976)). If a federal employee commits certain torts within the scope of their employment, the FTCA operates as "a limited waiver of sovereign immunity." *Orleans*, 425 U.S. at 813.

Motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Here, in arguing that Plaintiff's administrative claim lacked sufficient detail to satisfy the exhaustion requirement, the Government challenges the facts upon which subject matter jurisdiction is based. *See* **Doc. 12 at 6, 9**. When a court reviews a factual attack, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends, which does not allow a reviewing court to presume the truthfulness of the complaint's factual allegations." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (citation modified). Rather, courts are given "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

**DISCUSSION**

The Government contends that this Court lacks jurisdiction due to Plaintiff failing to exhaust his administrative claims and the application of the discretionary function exception. **Doc.**

**12 at 1**. Plaintiff argues that he properly exhausted his administrative claims and that the discretionary function exception does not apply. **Doc. 18 at 4, 7**. The Court finds that Plaintiff properly exhausted his administrative claim. But the Court finds that the discretionary function exception applies, and therefore, the Court lacks jurisdiction.

   I.   **Plaintiff exhausted his administrative claim before filing suit.**

While the FTCA is a limited waiver of immunity, the FTCA requires that claimants exhaust their administrative remedies before bringing suit in federal court. *See* 28 U.S.C. § 2675(a); *see also Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). The exhaustion requirement is jurisdictional and cannot be waived. *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991).

To sufficiently meet the administrative exhaustion threshold, a plaintiff must "either (1) have their administrative claims finally denied by the relevant federal agency; or (2) if the agency fails to act on their administrative claims within six months of presentment, they may thereafter deem the claims (constructively) denied." *Barnes v. United States*, 776 F.3d 1134, 1139 (10th Cir. 2015). A proper administrative claim includes "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Lopez*, 823 F.3d at 976 (quoting *Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005)). Stating legal theories is not required, "only facts plus a demand for money." *Id.* (quoting *Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996)). The claim includes "any cause of action fairly implicit in the facts." *Id.* The purpose of the exhaustion procedure, which courts should consider, is to "avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Bradley*, 951 F.2d at 271 n.3.

Here, on March 3, 2025, Plaintiff filed the present lawsuit alleging one count of negligence. **Doc. 1-1**. On or about June 25, 2024, Plaintiff submitted an administrative claim to CBP. **Doc. 12-1 at 1**. Plaintiff brought the present lawsuit over eight months after filing his administrative claim and failing to receive a determination. *See id.* at 1–2. Thus, Plaintiff properly deemed his administrative claim constructively denied and brought the present lawsuit. *See* 28 U.S.C. § 2675(a) (noting that failing to make a "final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim").

While Plaintiff waited the appropriate amount of time, Plaintiff also must have filed an administrative claim that sufficiently described the injury to enable CBP to begin its own investigation. Plaintiff put forth the following basis of the administrative claim:

> Mr. Carrillo was driving at DOT truck on 1-10, near Exit 5 off Highway 80 at mile marker 32 when he was struck head on by a vehicle being pursued at speeds as high as 95 mph by a U.S. Customs and Border Patrol vehicle. The vehicle that was being pursued crossed into the lane of Mr. Carrillo and hit him head on causing severe damage to property and person. The negligence on the part of the U.S. Customs and Border Protection is what led to this crash and subsequent injuries sustained by my client, Mr. Carrillo. Border Patrol agents who were in pursuit stated that they deployed spike strips against the fleeing vehicle

**Doc. 12-1 at 4**. This Court must determine whether the negligence claim in Plaintiff's Complaint is "fairly implicit" in his administrative claim. *See Lopez*, 823 F.3d at 976.

The Government contends that Plaintiff's failure to mention caravanning or following unreasonably close in his administrative claim does not exhaust his FTCA claim on those bases. **Doc. 12 at 7**. Plaintiff argues that he need not have listed "caravanning" or "following unreasonably close" by name in his administrative claim, and the agency was provided sufficient factual context to trigger an investigation. **Doc. 18 at 4**. The Court agrees.

Plaintiff's administrative claim states that he was "struck head on by a vehicle being pursued at speeds as high as 95 mph by a U.S. Customs and Border Patrol vehicle." **Doc. 12-1 at**

4

**4**. Further, the claim states that "[t]he negligence on the part of the U.S. Customs and Border Protection is what led to this crash and subsequent injuries sustained by [Plaintiff]." *Id.* Plaintiff also notes in the administrative claim that agents "deployed spike strips against the fleeing vehicle[.]" *Id.* Plaintiff's administrative claim refers directly to the CBP pursuit, mentions excessive speed and spike strips, and argues that "negligence on the part of" CBP caused the crash and his injuries. *See Trentadue*, 397 F.3d at 853 (finding the exhaustion requirement met when an administrative claim alleged facts giving notice to investigate, but the claim did not specifically mention a planned legal cause of action). Though the administrative claim does not specifically mention caravanning or following too closely, the claim does mention allegedly negligent conduct that occurred throughout the pursuit. Calling attention to allegedly negligent conduct throughout the pursuit provides sufficient notice that the Government should investigate the pursuit as a whole, which includes the possibility of improperly caravanning or following too closely. *See Benally v. United States*, 735 F. App'x 480, 485 (10th Cir. 2018) (unpublished) (noting that "courts should liberally construe the universe of facts that the FTCA claimant provides" without augmenting those facts to the complaint). Plaintiff's administrative claim, though concise, provided CBP notice that it should investigate the pursuit and agents' conduct as it relates to possible negligence.[1]

---

[1] The Government improperly relies on *Benally* and *Stevens v. United States*, No. 17-CV-688-WPJ-SCY, 2019 WL 1386732 (D.N.M. Mar. 27, 2019). In *Benally*, the Tenth Circuit found that a plaintiff's "clear laser-like focus" on the negligent performance of her surgery precluded finding that the agency was also on notice for negligent post-operative care and lack of informed consent. 735 F. App'x at 485–89. Here, there is no such "clear laser-like focus" on one aspect of the allegedly negligent pursuit. Plaintiff refers to high speeds, which occur throughout a pursuit, and spike strips which potentially end a pursuit. **Doc. 12-1 at 4**. Thus, Plaintiff's administrative claim provided notice that the Government should investigate the pursuit for negligence in its entirety. In *Stevens*, the district court found that a plaintiff's administrative claim recounting a door closing on him and the injuries he sustained was insufficient to imply the agency was negligent or negligently failed to warn him of the dangerous condition. 2019 WL 1386732, at *4. The *Stevens* plaintiff never mentioned negligence or attributed fault to the agency; but here, Plaintiff specifically refers to the pursuit that should be investigated and attributes his injuries to

Accordingly, the Court finds that Plaintiff's administrative claim provided the Government sufficient notice and met the exhaustion requirement.

## II. The discretionary function exception applies.

There are exceptions to the FTCA's limited waiver of sovereign immunity. *See* 28 U.S.C. § 2680. "When an exception applies, sovereign immunity remains, and federal courts lack jurisdiction." *Garling*, 849 F.3d at 1294. Under the discretionary function exception, sovereign immunity remains if a claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception applies whether or not "the government employees were negligent." *Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002). Since the discretionary function exception is jurisdictional, a plaintiff must prove it does not apply. *Hardscrabble Ranch, LLC v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016).

To determine whether the discretionary function exception applies, a court considers (1) whether the conduct is discretionary and (2) whether it requires the exercise of judgment based on considerations of policy. *See id.* at 1220 (citing *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)). If both prongs are satisfied, the discretionary function exception applies and the court lacks jurisdiction. *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008) ("[I]f a plaintiff can establish that either element is not met, the plaintiff may proceed because the exception does not apply." (citing *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008))). The Court considers each prong in turn.

---

the negligence of CBP. **Doc. 12-1 at 4**. Accordingly, neither *Benally* nor *Stevens* sufficiently resembles our case to warrant such heavy reliance.

### A. The conduct at issue is discretionary.

Under *Berkovitz*, a court considers whether the conduct is discretionary. *Hardscrabble Ranch*, 840 F.3d at 1220. A plaintiff must demonstrate the action was no "matter of choice for the acting employee." *Id.* (citing *Berkovitz*, 486 U.S. at 536). The discretionary function exception does not apply if a regulation or policy "specifically prescribes a course of action for an employee to follow." *Id.*

Plaintiff bears the burden of showing the discretionary function exception does not apply. *See id.* at 1220. Plaintiff contends that several sections in the Department of Homeland Security U.S. CBP Directive Number 4510-26 ("Directive"), which covers emergency driving and pursuits, were violated by agents and do not fall within the discretionary function exception.[2] **Doc. 18 at 7–8**. Additionally, Plaintiff puts forth arguments that the conduct at issue falls "within the scope of operational negligence" and the violated provisions imply "a duty of care, not unbridled discretion." *Id.* **at 8**. But "the question of negligence is irrelevant." *Garcia*, 533 F.3d at 1176. Thus, the Court focuses its inquiry on whether Plaintiff demonstrates the challenged actions were not a matter of choice.

### 1. The agents' initial decision to pursue is discretionary.

Section 7.1(B) of the Directive puts forth the following overarching directive:

> As each incident may vary greatly, Officers/Agents shall be responsible for determining appropriate vehicle speed and operating a vehicle within its capabilities taking into account road and weather conditions. Officers/Agents must operate CBP emergency equipped vehicles in a reasonable and prudent manner and are responsible for continually evaluating and balancing that the law enforcement benefit of, and need for, emergency driving outweighs the immediate and potential danger created by such emergency driving (See Section 7.3).

---

[2] Plaintiff refers to "[t]he CBP directives cited in the Complaint." **Doc. 18 at 7**. Thus, the Court considers the sections referenced in the Complaint.

**Doc. 12-2 at 7**.

As a threshold matter, agents possess discretion in deciding whether to pursue. Section 7.1(B) holds agents in pursuit responsible for operating vehicles in a "reasonable and prudent manner" and "continually evaluating and balancing" the law enforcement benefit and danger created by the driving. *Id.* Directing agents to pursue in a "reasonable and prudent manner" while balancing the law enforcement need for pursuit with the present danger presents the agent with no clear choice; rather, the agent is given immense discretion. This overarching provision aligns with the broad discretion typically provided in law enforcement's investigatory activities. *See Ashley v. United States*, Case No. 1:20-CV-0154-SWS-MLC, 2020 WL 8996805, at *8 (D.N.M. Nov. 2, 2020) ("Generally, the discretionary-function exception covers law enforcement and investigatory activities."). Accordingly, the Court finds that Plaintiff has not met his burden demonstrating that the agents' decision to pursue a vehicle falls outside the discretionary function exception.

### 2. The agents' use of a spike strip and vehicle distance were discretionary.

Plaintiff argues that the agents' violations of the vehicle immobilization devices ("VIDs") and vehicle spacing protocols are not shielded by the discretionary function exception. **Doc. 18 at 8**. The controlling inquiry is whether the following provisions "specifically prescribe[] a course of action" for an agent to follow. *Hardscrabble Ranch*, 840 F.3d at 1220. Section 7.4(A)(6) posits that "alternatives to pursuit, including the use of VIDs, consistent with CBP policy, are preferable to pursuit and are encouraged in order to terminate or avoid a vehicle pursuit." **Doc. 12-2 at 9**. Section 7.4(C)(2) notes that "[a]ll units in the pursuit shall space themselves at a reasonable distance that will provide a prudent degree of safety practicable under the circumstances, particularly in the event that the lead vehicle stops, slows or turns." *Id.* **at 10**.

Section 7.4(A)(6) leaves CBP agents with discretion since they "are encouraged" to use "alternatives to pursuit," but by no means required to do so. Section 7.4(C)(2) uses the word "shall" and appears less discretionary than section 7.4(A)(6); however, section 7.4(C)(2) does not specifically prescribe a "reasonable distance" and even leaves the determination up to an agent "under the circumstances." *See Domme v. United States*, 61 F.3d 787, 791 (10th Cir. 1995) (finding discretion when an order did not "specify the precise manner" in which to conduct safety appraisals). Accordingly, Plaintiff fails to demonstrate that the agents' use of a spike strip and their following distance were not discretionary.

### 3. The agents' decision to caravan is discretionary.

The Court notes that the Government does not advance its discretionary function exception argument to contest Plaintiff's allegation that CBP negligently caravanned. **Doc. 12 at 10 n.2**. But Plaintiff bears the burden to demonstrate that the discretionary function exception does not apply. *Hardscrabble Ranch*, 840 F.3d at 1220.

Section 7.4(A)(3) posits that "[c]aravanning is prohibited in a vehicle pursuit, absent exigent circumstances. Unless expressly authorized by a supervisor, pursuit shall be limited to the assigned primary and secondary vehicles." **Doc. 12-2 at 9**. Section 5.5 defines caravanning as "[t]hree or more law enforcement vehicles following in close proximity to the suspect vehicle during a pursuit." *Id.* **at 3**.

Section 7.4(A)(3) specifically prohibits caravanning unless there are exigent circumstances and express authorization by a supervisor. The determination of exigent circumstances involves discretion, but express authorization by a supervisor leaves no matter of choice for the acting agent. In other words, without express authorization by a supervisor, agents may not caravan regardless of exigent circumstances.

9

Here, Plaintiff alleges that "USCBP agents were caravanning in their pursuit of the speeding GMC Sierra truck without exigent circumstances." **Doc. 1 ¶ 35**. Not only is this merely half the inquiry, it is the discretionary half. The conduct at issue requires the discretion of CBP agents in determining whether a circumstance is exigent. Crucially, Plaintiff fails to allege that the agents caravanned without express authorization of a supervisor. *See Domme*, 61 F.3d at 789 n.1 ("[W]e should evaluate the specific conduct at issue using the *Berkovitz* test."). Further, Plaintiff fails to allege that none of the CBP agents in pursuit were supervisors or that none had received authorization from a supervisor otherwise entitled to use their discretion to authorize caravanning. Thus, Plaintiff has not demonstrated that the CBP agents' caravanning, in this case, did not involve a matter of choice or their judgment. Accordingly, the Court finds that the CBP agents' decision to caravan falls within the first *Berkovitz* prong.

B.  **The decisions are susceptible to policy analysis.**

Once a court determines the challenged conduct is discretionary, a plaintiff must demonstrate that the decision is not "of the kind that the discretionary function exception was designed to shield." *Elder*, 312 F.3d at 1181 (quoting *Berkovitz*, 486 U.S. at 536). If established government policy allows an agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Ball v. United States*, 967 F.3d 1072, 1076 (citation modified) (quoting *United States v. Gaubert*, 499 U.S. 315, 324 (1991)). The exception applies only to decisions "susceptible to policy analysis." *Elder*, 312 F.3d at 1181 (quoting *Gaubert*, 499 U.S. at 325). A court must inquire whether the decision "implicates the exercise of a policy judgment of a social, economic, or political nature." *Id.* (quoting *Duke v. Dep't of Agric.*, 131 F.3d 1407, 1411 (10th Cir. 1997)).

Here, Plaintiff contends the challenged conduct is not the type of policy judgment that the discretionary function exception was designed to shield. **Doc. 18 at 7**. Plaintiff must overcome the presumption that the CBP agents' decisions are grounded in policy, *see Gaubert*, 499 U.S. at 324, and Plaintiff bears the burden of establishing that the discretionary function exception does not apply, *Hardscrabble Ranch*, 840 F.3d at 1220. But, aside from distinguishing a few cases put forth by the Government, Plaintiff cites no legal authority in support of the second *Berkovitz* prong and primarily contends that the agents' actions constitute "actionable negligence." **Doc. 18 at 7–9**. This is hardly enough to overcome the presumption that the agents' decisions were grounded in policy considerations.

Additionally, in addressing the first *Berkovitz* prong, Plaintiff directs the Court to section 7.1(B) which puts forth an overarching balancing test that agents are to consider throughout a pursuit. **Doc. 1 ¶ 39; Doc. 12-2 at 7**. During the pursuit, agents "are responsible for continually evaluating and balancing" the law enforcement need for and benefit of emergency driving and the immediate and potential dangers created. **Doc 12-2 at 7**. Section 7.1(B) permeates the entire pursuit and reflects policy considerations about public safety, officer safety, and law enforcement benefit. *See Johnson v. U.S. Dep't of Interior*, 949 F.2d 332, 339 (10th Cir. 1991) (noting that "the balancing of safety objectives against . . . practical considerations" sufficiently implicates public policy).

Section 7.1(B) puts forth the policy considerations often facing law enforcement agencies that have been found to satisfy the second *Berkovitz* prong. *See Awad v. United States*, 807 F. App'x 876, 881 (10th Cir. 2020) (unpublished) (noting that decisions about whether to investigate, how to investigate, what weapons to use, and how to best execute warrants are policy considerations). While the agents' use of a spike strip is preferred to pursuit, that decision is left to the agent's

11

discretion, and the decision to follow closely must be reasonable "under the circumstances." **Doc. 12-2 at 9–10**. The decision to caravan is left to the discretion of a supervisor who engages in policy considerations about whether exigent circumstances exist and caravanning should be authorized. Thus, the decisions about whether to pursue, to use a spike strip, to caravan, and how closely to follow are decisions susceptible to policy analysis. Therefore, the Court finds that Plaintiff fails to overcome the presumption that the conduct at issue is grounded in public policy considerations. Accordingly, the discretionary function exception applies, and the Court lacks subject matter jurisdiction.

## CONCLUSION

In sum, the Court finds that the Government retains its sovereign immunity, and therefore, the Court lacks subject matter jurisdiction.

**IT IS THEREFORE ORDERED** that the Government's Motion to Dismiss for Lack of Jurisdiction (**Doc. 12**) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint (**Doc. 1**) is **DISMISSED WITHOUT PREJUDICE**.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE